The Executors of ANDREW HOWELL, deceased, v. THOMAS AUTEN and others.

The maker of a promissory note, is a competent witness to prove it usurious.

An objection to the competency of a witness ought to be made at the time of taking the deposition?—*Qu.*

To constitute usury, under the statute of New-Jersey, there must be a *contract* in violation of the act.

[Executors of Howell v. Auten et al.]

If a party agree to lend money at a legal rate of interest, and after completing the contract, and receiving the borrower's obligation for the money, withholds a part of the amount loaned, in violation of the agreement of the parties, the obligation is not thereby tainted with usury, although the money be withheld by the lender as a premium for the loan.

The obligation, in such case, is a valid security for the amount actually advanced upon it, but no more. The borrower will be entitled to a credit for the amount withheld in violation of the agreement.

THE bill is filed for the foreclosure of a mortgage made by Thomas Auten, one of the defendants, to Andrew Howell in his life-time, and for the sale of the mortgaged premises. The answer admits the bond and mortgage, but insists that they are usurious and void. The facts relied upon as proving the usury, sufficiently appear in the opinion of the chancellor.

*T. Frelinghuysen*, for complainants, contended,

1. That the answer contained a specific charge of usury. The transaction charged as usurious, must be proved as stated in the answer. 3 *Stark.* 1521 ; 3 *Term Rep.* 531 ; 2 *Shower*, 329 ; 1 *Selw. N. P.* 466.

2. A party to a note is not competent to prove it usurious. 14 *John. R.* 270 ; 17 *Mass.* 122.

3. The case proved does not constitute usury.

*Hartwell*, for defendant, in reply.

It is sufficient to prove the charge of usury substantially as laid. 3 *Stark.* 1522 ; 1 *East.* 195 ; 4 *Burr.* 2251 ; 2 *Saund. P. and E.* 560.

It is too late to object to the competency of the witness. The objection should have been made at the time of taking the deposition, when his interest might have been released. 2 *Stark.* 755 ; 10 *Mod.* 192 ; 2 *Stark.* 756.

The contract being tainted with usury, the mortgage is void, and the bill must be dismissed. 2 *John. Cas.* 60 ; 5 *Law Lib.* 70 ; 5 *Term Rep.* 537.

THE CHANCELLOR. This bill was filed by Andrew Howell in his life-time, for the foreclosure and sale of the premises con-

tained in a mortgage bearing date the fourth day of March, 1824, made by Thomas Auten to him, to secure the payment of a bond of that date between the same parties. The bill is in the usual form. Thomas Auten has filed his answer, admitting that he gave the complainant the bond and mortgage on which the suit is brought; but says, that one Augustus F. Cammann, his neighbor, being pressed for money, informed him of his situation, and that Andrew Howell would lend it to him, if the said Thomas Auten and one John Miller, would become security for the payment thereof. That he consented to become security for one thousand dollars; after which Andrew Howell called upon him with a note, signed by Augustus F. Cammann and John Miller, bearing date the first of February, 1822, payable in one year, to the order of the said defendant, Thomas Auten, for one thousand dollars, which he endorsed. That after endorsing the said note, having some other dealings with Andrew Howell, by which he became indebted to him, and having sustained losses to a considerable amount, Andrew Howell required him to execute to him the bond and mortgage before stated, as well for the monies he owed him as for the amount of the said note on which he was the endorser. This he did with reluctance, and not until he was threatened with a prosecution for the money. The defendant then states, that sometime after the execution and delivery of the said note, the precise time he cannot state, but believes it was in the spring of the year he executed the aforesaid bond and mortgage, he stated to Andrew Howell that Cammann objected to the payment of the one thousand dollar note, and meant to set up the plea of usury: that he charged him, Andrew Howell, with taking twenty-one per cent. for the loan of the thousand dollars for a year; and that all the money he had received was seven hundred and ninety dollars. That Andrew Howell said he did not think he had taken twenty-one per cent. : that it was not more than one hundred dollars in all. The defendant then concludes his answer by saying, that he cannot *positively* say that the said Andrew Howell, at the time of the execution and delivery of the thousand dollar note, took from Cammann two

[Executors of Howell v. Auten et al.]

hundred and ten dollars for the forbearance of the said sum of one thousand dollars for one year, but *believes and charges the same to be true.* He then insists, that the bond and mortgage are usurious and void under the statute. To this answer a replication has been filed, putting the cause at issue, and depositions taken.

It is very evident that the defendant himself has no personal knowledge of the transaction, but relies on and believes the information given him by Mr. Cammann. He answers in a guarded manner, and with great propriety.

The single question raised by these pleadings, is, whether the bond and mortgage is tainted with usury? If so, I can have no alternative but to declare them void. But before I can do this, seeing that such a result is highly penal in its character, destroying the whole demand of the complainants as founded on the bond and mortgage, I ought to be well satisfied that the case proved comes within the true construction and meaning of the act against usury, and the proof from the mouth of competent witnesses. I have already stated that the defendant, by his answer, clearly relies on information received from Augustus F. Cammann; and when I examine the evidence, I am equally clear that the defendant must rely on the evidence of the same person to sustain his cause.

This witness is objected to by the complainants, first, because his name appears as one of the makers of the thousand dollar note, and it is against public policy that a man shall be allowed by his own evidence to destroy a negociable instrument on which his name appears.

If this was a new question, it would present matter for grave deliberation, for I confess I have ever felt a great reluctance to the admission of such a witness; but since the case of *Rosevelt* v. *Gardner,* in 2 *Pennington,* 791, I consider it settled that this objection cannot, alone, exclude the witness. The practice has been, and so I consider the rule settled in New-Jersey, that the witness is competent. But this objection cannot apply to the present case. This action is not founded on the note. That was

given up to the party at the time the bond and mortgage were executed on which the present action is brought.

The second objection is more serious, on the ground of interest. It seems that this witness is the only party really interested in the loan of the thousand dollars. The defendant, Auten, is only security for Cammann, and I can perceive no good reason why a recovery on this bond and mortgage will not make him directly liable to Auten for the money. With this strong impression on this point against the competency of the witness, I incline still to allow his testimony, letting the objection go to his credit rather than to his competency. I do so from a desire to settle the case on its merits, as more satisfactory to all the parties, and because no objection was raised to the witness at the time he was sworn, when, as was truly said by the defendant's counsel, it was in their power to have released the witness, and thereby made him competent.

I am, then, to examine this case upon the whole evidence, the most material of which is that of Augustus F. Cammann. The first section of the statute against usury, provides, "that no person shall, upon any *contract*, take directly or indirectly, for loan of any money, wares, &c. above the value of seven dollars for the forbearance of one hundred dollars for a year." This is a case under the old law, prior to the 4th of July, 1824. The second section provides, "that all notes, bills, bonds, mortgages, &c. made for the payment of any money *so to be lent*, on which a higher interest is reserved or taken, shall be utterly void." It is clear, that to constitute usury, there must be a *contract* in violation of the act. In 2 *Saunders on Pleading and Evidence*, 493, it is said, "To constitute usury under the .act, there must be a contract with an unlawful intent to take illegal interest." And in 1 *Camp*. 149; "it must be shown that there was a contract or agreement for usurious interest: for if the interest appear to have been reserved by mistake, or upon an error in computation, the contract will not thereby be avoided." It has also been held, that the contract must be tainted with usury in concoction, and any subsequent corrupt contract will not invalidate it.

1 *East*. 95. A bond made upon a legal contract, to carry only legal interest, if one party should pay a higher rate of interest than the law allows, and the other party should receive it, would not thereby become void, for the plain reason, that it was no part of the original contract.

Taking these principles as true, and giving full credit to the testimony of Mr. Cammann, I cannot see how this contract can be made out to be usurious. From his own case, there was no contract between him and Andrew Howell ever made, by which he was to pay more than the legal interest for this money. Being in want of money, Cammann applied to Andrew Howell for it, and was told by him that if he would give his note with one John Miller, and endorsed by Thomas Auten, that he could raise the money on it. That such note, for a thousand dollars, was accordingly made and handed to Andrew Howell. No money, it would seem, was paid until after the note was executed and delivered to Andrew Howell. What were the terms of the contract? Was Howell to have any thing beyond the legal interest for the loan of the money? This is the material question. The witness answers it explicitly. Referring to the note, he says, " there was nothing but common interest for the consideration." This is the language of the witness, and he afterwards explains the meaning of the word *common* interest, as used by him in this expression, to be *legal* interest. Throughout his whole evidence, he complained of the treatment of Andrew Howell, in not paying him the whole of the thousand dollars, as a breach of good faith; not as a withholding, upon any express or implied contract at the lending of the money that he might do so, but as being contrary to both. We have, then, this case. Howell agrees to lend Cammann, upon his note with security, one thousand dollars. By the contract, he was to be charged nothing but the legal rate of interest. Howell pays him a part of the money by a Mr. Hoagland at one time, being two hundred and fifty dollars, and a part at another time, but withholds, contrary to good faith, a part of the money. Is this usurious within the meaning of the statute? Howell is clearly indebted to

8

Cammann for the money he withholds. In other words, he has a note for more money than he is entitled to. This, as it appears to me, is the whole case. The witness further states, that he asked Mr. Howell about the item of two hundred dollars, and told him it was too much interest for him to pay; to which Howell replied, that money was very scarce, and could not be got without it. Does not this very conversation show, that the withholding of that money was in bad faith, and against the agreement of the parties? Might not Cammann, upon this case, have recovered this money from Howell? But the witness says, Howell retained this money as a premium for raising the thousand dollars. If he did, it was not by virtue of the original contract, as the witness expressly swears. I consider this case the same, as if the name of John Vannest had not been on the note at all. I have no doubt the real transaction was between Cammann and Howell, and I shall protect the defendant in this action from paying any thing more on this note than Howell advanced, with the interest thereon, that being the good faith of the contract; but I cannot declare the same usurious, not coming, in my judgment, within the provisions of the act. This is no case of a cover to usury, for the witness declares the contract to have been a fair and just one.

There appears to have been other transactions between these parties, and which were blended in the settlement of the note. Cammann thought proper, contrary to the usual course of business, to give the note first, and depend on Howell's paying him the money afterwards.

The evidence of James Cain relates to a conversation he had with Howell on this subject, in 1827. He went to see him about a note of Stephen Perrine. This must have been after Cammann had set up usury in this case, as the defendant, in his answer, says it was in the spring of 1824 that he told Howell that Cammann meant to set up the plea of usury against the note. The amount of this conversation with Mr. Cain, was, that the Perrine note was turned into this Cammann note; and Howell said he meant to wait the result of this suit before he disposed of

[Executors of Howell v. Auten et al.]

that claim, for he did not know but they might lose the money on account of usury. But he adds, as a reason for this apprehension, that Cammann was a strange kind of man, and there was no knowing what he might say. This evidence no way varies the case.

Upon the whole case, therefore, I am of opinion, that the contract on which the bond and mortgage in this case were given, was not usurious within the meaning and true construction of the statute on that subject, but that the same are a valid security to the extent of the money advanced by Howell on the same to Cammann, and of the liabilities of Cammann which were settled thereby. I shall direct a reference to a master, to ascertain the amount due on the same, in conformity with this opinion, with direction to allow the defendant a credit for any part of the thousand dollars which was never paid or accounted for by Andrew Howell to Augustus F. Cammann on the loan.

[NOTE. The decree in this cause was appealed from by Thomas Auten, one of the defendants; and at May term, 1839, the decree of the chancellor was unanimously affirmed by the court of appeals.]